## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                                     Criminal No. 06-cr-20411-4

v.                                  Civil No. 12-cv-10221

DERRICK YOUNG,

     Defendant.

_____/

### OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE, DENYING MOTION FOR PRODUCTION OF DISCOVERY, DENYING MOTION FOR PRODUCTION OF TRANSCRIPTS, AND DENYING A CERTIFICATE OF APPEALABILITY

Several people were involved in a concerted effort to kidnap and brutally beat a drug-distributing rival of one of them. Consistent with their plan of action, the victim, in the end, was shot and killed by one of the conspirators and his body set afire. Defendant Derrick Young pleaded guilty to his involvement under a plea agreement that recommended favorable sentencing treatment in exchange for his truthful testimony against the co-conspirator who had actually shot the victim. His co-defendants did the same, save the one they all fingered as the trigger man.

But at his plea hearing, Defendant lied. Before the murder trial of the remaining co-conspirator, at which he was prepared to testify, Defendant admitted that he had falsely identified the perpetrator, and that he, himself, had pulled the trigger. The Government properly withheld its initial recommendation for leniency and the court sentenced Young to a within-guidelines sentence.

On January 17, 2011, Young filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel.  He challenges his conviction for conspiracy to possess with intent to distribute and distribution of cocaine and killing a person while engaged in an offense punishable under 18 U.S.C. §924(c).  Defendant also filed a motion for production of discovery and a motion for production of transcripts, seeking additional information that he says will allow him to effectively present his claims.  For the reasons explained below, the court will deny Defendant's motion to vacate his sentence, deny Defendant's motion for the production of discovery, and deny Defendant's motion for production of transcripts.

## I.  BACKGROUND

On January 3, 2006, a group including Defendant, Rudolph Dalron Williams, Frank Pierce, Darryl Pierce, and Clarence Jackson, kidnaped, robbed, and murdered rival drug dealer Antonio Brown.  The group lured Brown to a house at 12915 Stahelin Street in Detroit, Michigan where they tied him up and beat him, until he disclosed the whereabouts of his drugs and money.  With Brown in the trunk, the group drove to multiple locations searching for his cash.  Eventually Defendant shot and killed Brown, and the group set the vehicle ablaze.  The Government indicted all five men on two counts:  (1) conspiracy to possess with intent to distribute and distribution of cocaine (21 U.S.C. §§ 846, 841(a)(1)), and killing a person while engaged in an offense punishable under 18 U.S.C. § 924(c) and aiding and abetting in such an offense (18 U.S.C. §§ 924(j), 2).

On November 23, 2009, Defendant, represented by appointed counsel, pleaded guilty to a fifth superseding information, pursuant to a Rule 11 plea agreement which

2

calculated Defendant's sentencing guidelines as 262 to 327 months' incarceration. The agreement recommended that the court sentence Young to no more than the midrange of his sentencing guidelines. Additionally, a separate U.S.S.G. § 5K1.1 cooperation agreement indicated that the Government intended to move for a downward departure and request a sentence of 188 months' incarceration if Young would provide substantial assistance to the Government in its investigation and prosecution of others.

When Defendant initially spoke with investigators he misrepresented his role in the conspiracy, stating that Williams shot and killed Brown. In fact, Young pulled Brown from the vehicle and fired the shots that killed him. Defendant, Jackson, Pierce, and Williams maintained the same false story until Williams had a change of heart. Defendant maintained the lie in his Rule 11 plea agreement as well as in his own testimony, under oath, before the court when he pleaded guilty. On November 10, 2010, Young came before the court and admitted that he had lied and explained his true role in the crime:

> MR. STEINGOLD: [Y]ou told the judge that while you participated in the murder, it was Rudolph Williams who was the person that actually shot the gun that killed Mr. Brown.
>
> THE DEFENDANT: Yes
>
> MR. STEINGOLD: Is that correct?
>
> THE DEFENDANT: Yes
>
> MR. STEINGOLD: Was that true?
>
> THE DEFENDANT: No
>
> . . .

3

       MR. STEINGOLD:  I want you to tell the Court who shot Antonio Brown.

       THE DEFENDANT:  I did.

(Dkt. # 277, Pg. ID 1055–56.)  This admission came shortly before the Government's anticipated trial of Williams for Brown's murder, where Defendant was expected to testify against Williams.

       Finding that Young did not provide substantial assistance as called for in his cooperation agreement, the Government did not move for a downward departure under U.S.S.G. § 5K1.1 and instead moved for a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  The Government also successfully argued that Defendant should not receive a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.  Accordingly, Defendant's sentencing guidelines were recalculated, yielding an advisory range of 360 months to life in prison.  Subsequently, the court sentenced Young to concurrent terms of 240 months' imprisonment on count I and 720 months' imprisonment on count II, followed by a three year term of supervised release.  The court entered its judgment on January 24, 2011.

       On June 10, 2011, the Sixth Circuit Court of Appeals received Defendant's *pro se* notice of appeal.  The Sixth Circuit granted the Government's motion to dismiss the appeal as late.  Defendant filed the pending motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  Thereafter, he filed a motion for production of discovery and, subsequently, a motion for the production of transcripts.

4

## II. STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the ground "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  As "[§] 2255 is not a substitute for a direct appeal," *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to merit collateral relief, *Frady*, 456 U.S. at 166.  Consequently, "[t]o prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993)).  Though non-constitutional errors are generally outside the scope of § 2255 relief, *see United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000), a defendant can prevail on a § 2255 motion alleging non-constitutional error by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process," *Watson*, 165 F.3d at 488 (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)) (internal quotation marks omitted).

5

### III.  DISCUSSION

### A.  Motion to Vacate

Defendant's motion to vacate his sentence alleges that his court appointed counsel was ineffective for:  (1) failing to perfect an appeal on his behalf and (2) allowing him to enter into a plea agreement unknowingly and involuntarily.

To prevail on an ineffective assistance claim, a defendant must first show that counsel's performance was deficient.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Secondly, "defendant must show that the deficient performance prejudiced the defense."  *Id.*  A defendant may establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial."  *Id.*  A defendant must show more than "some conceivable effect on the outcome of the proceeding"; he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 693–94.  "In deciding an ineffective assistance claim, a court need not address the two components of the claim in any order, or even address both components if an insufficient showing is made on one."  *United States v. Cox*, 826 F.2d 1518, 1525 (6th Cir. 1987) (citation omitted).  Each of Young's claims will be addressed below.

### 1.  Filing an Appeal

Defendant alleges that his counsel failed to file an appeal, in derogation of his request to do so, thereby depriving him of effective assistance of counsel.  Defendant's argument is unconvincing for two reasons:  (1) the evidence does not show that he made a timely request for an appeal, *i.e.,* within 14 days of final judgment, and (2) in his

6

Rule 11 plea agreement, Defendant waived his right to appeal his conviction and sentence, provided that his sentence was no higher than the maximum calculated under the sentencing guidelines.

### a. Defendant's Request to File an Appeal

Young asserts that he is entitled to relief because his attorney failed to discuss appellate grounds with him before sentencing.  Defendant claims that "[defense] counsel David Steingold never states in his affidavit that he consulted with [me] about appellate grounds."[1]  (Dkt. # 293, Pg. ID 1294.)  To the contrary, Steingold's affidavit states, "I met with Mr. Young prior to his sentencing and went over the waiver of appeal in the Rule 11 Agreement and explained to him that I did not believe he had any basis to file an appeal."  (Dkt. # 288-3, Pg. ID 1255.)  Young, therefore, has not shown that his counsel deprived him of reasonable advice and assistance regarding appellate grounds before sentencing.

Similarly, there is nothing in the record to prove that Young requested that his counsel file an appeal immediately following his January 18, 2011 sentencing.[2] Submissions to the court reveal that on June 1, 2011, approximately four months after his sentencing, Young wrote counsel to inquire about his appeal, and that on June 10, 2011, the Sixth Circuit received Defendant's *pro se* Notice of Appeal (dated June 1, 2011).  Counsel contacted the Sixth Circuit the day he received Defendant's inquiry and

---

[1]Richard Korn represented Defendant from July 2006 to September 2010.  The court appointed David Steingold to serve as counsel beginning in September 2010.

[2]The court signed Young's Judgment on January 24, 2011.  *See* Dkt. # 262. Young had 14 days from that date to file his notice of appeal.  *See* Fed. R. App. P. 4(b)(1)(A).

learned of Defendant's already pending appeal.  Steingold's affidavit also states that he did not "receive any communication [from January 2011 to June 2011] from anyone on [Young's] behalf indicating he wanted an appeal to be filed."  (Dkt. # 288–3, Pg. ID 1256.)  The court concludes that Young expressed his desire to appeal his sentence in June 2011, and at that time contacted defense counsel, as well as the Sixth Circuit, to relay his wishes.  Defendant has not shown that defense counsel ignored his request to direct an appeal.

### b.  Defendant's Appeal Waiver

The Government argues that because Young waived his right to appeal his sentence in his Rule 11 agreement, Young's counsel cannot be found ineffective for failing to file an appeal.  The court agrees.

Defendant did, in fact, waive his right to appeal his conviction and sentence when he entered his guilty plea pursuant to the Rule 11 agreement.  The plea agreement states:

> If the sentence imposed does not exceed the maximum recommended by Part 3 of this agreement, defendant waives any right he has to appeal his conviction or sentence.  If the sentence imposed is within the guideline range determined by Paragraph 2B the government agrees not to appeal the sentence, but retains its right to appeal any sentence below that range.

(*Id.* at Pg. ID 464–65.)  Part 3 of the agreement states:

> Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) the government makes a non-binding recommendation that the sentence of imprisonment be no more than the mid-point of the sentencing guideline range advocated by the government as described in Paragraph 2B.

(*Id.* at Pg. ID 463.)  The sentencing guidelines range described in Paragraph 2B states:

8

There are no sentencing guideline disputes.  Except as provided below, the parties recommend that the defendant's guideline range is 262–327 months, as set forth on the attached worksheets.  If the court finds:

> a) that defendant's criminal history category is higher than reflected on the attached worksheets, or

> b) that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense(s); or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than 262–327 months, the higher guideline range becomes the range recommended by defendant and government.  The Court is not bound by this recommendation concerning the guideline range, and the defendant understands that he will have no right to withdraw his guilty plea if the Court does not follow this recommendation.

(Dkt. # 193, Pg. ID 461–62.)

The court appropriately sentenced Young to concurrent terms of 240 months' imprisonment as to count I and 720 months' imprisonment as to count II.  The court relied on the pre-sentence investigation report which calculated his guidelines range as 240 months as to count I and 360 months to life imprisonment as to count II.  As a result of Young's perjury, the court properly allowed for a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and no decrease in offense level for acceptance of responsibility under U.S.S.G. § 3E1.1.  A defendant who lies to the court or to investigators may properly be given a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  *See, e.g.*, *United States v. Turner*, 324 F.3d 456, 461 (6th Cir. 2004) (holding that the district court properly assessed a two-level enhancement to a defendant who pleaded with the court to allow him to remain free on bond so he would not lose his job where defendant had already been fired from his job).

9

Young lied in his plea agreement with the Government, and to the court at his plea hearing. He willfully misled investigators and the court to believe that his co-conspirator, Williams, killed Brown. Based on this lie, the Government prepared to try Williams for murder, with Young promising to serve as a witness. Thus, the court properly assessed a two-level enhancement to Young's sentencing guidelines for obstruction of justice. Likewise, the court properly withheld any reduction in offense level for acceptance of responsibility. The sentencing guidelines permit a downward adjustment, "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. However, a defendant who "receive[s] enhancements for obstruction of justice [is] not considered eligible for acceptance-of-responsibility credit except in extraordinary cases." *United States v. Frost*, 521 F. App'x 484, 492 (2013) (citing U.S.S.G. § 3E1.1 cmt. n.4). The defendant bears the burden of proving the extraordinary nature of his case. *Id.* (citing *United States v. Angel*, 355 F.3d 462, 477 (6th Cir. 2004)). Defendant has not met his burden of proving that his case falls within the narrow exception to the general rule barring a defendant who obstructs justice from receiving credit for acceptance of responsibility. *Id.* (citations omitted).

The court sentenced Defendant within the terms of his plea agreement and he is therefore bound by the agreement's waiver of his right to appeal. "It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005) (citation and internal quotation marks omitted). "When a defendant waives his right to appeal his sentence in a valid plea agreement, [the][c]ourt is bound by that agreement and will not review the sentence except in limited circumstances." *United*

10

*States v. Brandon*, 445 F. App'x. 845, 848 (6th Cir. 2012) (quoting *United States v.*

*Smith*, 344 F.3d 479, 483 (6th Cir. 2003).

Finally, Young's reliance on *Carrion v. United States*, 107 F. App'x. 545 (6th Cir.

2004), for the proposition that a defendant who signs an appeal waiver is not *absolutely*

precluded from pursuing an appeal is misplaced.  In that case, the Sixth Circuit held that

when an attorney fails to file an appeal, contrary to a defendant's express wishes, it

amounts to a *per se* violation of the Sixth Amendment.  *Id.* at 546 (citing *Ludwig v.*

*United States*, 162 F.3d 456 (6th Cir. 2004).  However, the rule explained in *Carrion*

presupposes that the defendant asked counsel to file an appeal.  *Id. at 547.*  "Without

an actual request by the defendant that counsel file an appeal, the defendant would not

fall within the compass of [this] rule." *Id.*  As discussed in the preceding section, the

evidence does not show that Young asked his attorney to file an appeal within 14 days

of sentencing, so as to avoid a dismissal for timeliness.  Moreover, after he received

Defendant's request to appeal, defense counsel did attempt to file an appeal on his

behalf.  As defense counsel explained in his affidavit:

> In June, 2011, counsel was contacted by Derrick Young by letter dated June
> 1, 2011, who inquired about an appeal.  I contacted the Sixth Circuit Court
> of Appeals the same day the letter was received and was told a Notice of
> Appeal was already filed by Mr. Young, dated June 1, 2011 and received by
> the court on June 10, 2011.

(Dkt. # 288–3, Pg. ID 1255.)

Defendant has not proven that counsel acted contrary to his express request for

an appeal.  Therefore, defense counsel did not provide ineffective assistance of

counsel.

## 2.  Unknowing and Involuntary Plea

11

Defendant asserts ineffective assistance of counsel alleging that his attorney allowed him to enter into a plea agreement unknowingly and involuntarily because: the Government withheld *Brady* material, the plea agreement was illusory, he pleaded "to the information in which this court did not have jurisdiction" (Dkt. # 283, Pg. ID 1165), his attorney failed to advise him to proceed under an entrapment defense, and his attorney provided generally ineffective assistance during the plea and sentencing stages of his case. Defendant's *Brady* section raises two additional ineffective assistance claims—he asserts that counsel failed to explain the charges lodged against him, and that there existed no factual basis for his plea to conspiracy.

The two-part standard adopted in *Strickland* applies to guilty plea challenges based on ineffective assistance of counsel and requires a defendant to show that counsel's representation fell below an objective standard of reasonableness. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case." *Strickland*, 466 U.S. at 690.

### a. *Brady* Material

Young claims that the Government withheld evidence favorable to the defense, thereby rendering his guilty plea unknowing and involuntary. In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). Defendant asserts that the Government withheld evidence

12

identifying his co-conspirator, Williams, as a government agent.  He claims that the

Government's failure to disclose this potential impeachment material prejudiced his

defense in violation of *Brady*.  Had the evidence been turned over, Defendant claims, he

may have chosen to proceed to trial.  Defendant's argument, however, does not prove

that the Government withheld favorable material that may have impacted the result of

the proceedings.

Defendant's allegations of a *Brady* violation are completely unsupported.  First,

he fails to prove that the alleged material was favorable, second, he fails to show that

the Government withheld evidence, and third, he fails to establish that he was

prejudiced.  *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (defining the elements of a

true *Brady* violation).  Although the existence of an informal, unwritten, or tacit

agreement between the government and a witness may be considered possible

impeachment material subject to *Brady's* disclosure mandate, the record leaves the

court unable to conclude that such an agreement existed here between Williams and

the Government.  *Bell v. Bell*, 512 F.3d 223, 233 (6th Cir. 2008) (citations omitted).

Because Defendant cannot establish the mere existence of exculpatory

evidence, he is, by default, unable to support a *Brady* violation claim.  As such, the court

need not discuss the second or third prongs of the *Strickler* test.  Finally, the court notes

that the Government details how it fulfilled its *Brady* obligations (*see* Dkt. # 288, Pg. ID

1233–34), and the court sees no reason to surmise that it is being misled.

In the *Brady* section of his motion, Defendant raises additional claims of

ineffective assistance of counsel, asserting that he did not have an understanding of the

law in relation to the facts, and that counsel failed to explain the elements of the

13

charges and offenses to which he pleaded guilty.  However, the plea colloquy transcript

shows that the court extensively reviewed the elements of the crimes Young pleaded to,

as well as how the elements pertained to his particular case.

> THE COURT:  The charge contained in Count 1 is a conspiracy to which you
> intend to offer a plea of guilty.  I need to describe to you what it takes to be
> guilty of an offense such as that.  It's in the Rule 11 agreement.  Let's go over
> it specifically.  To be guilty of a conspiracy, it has to be true that at least two
> people agreed to commit the crime of drug distribution . . . . The second thing
> that has [to be] true is that you have to be a part of the agreement . . . . As
> long as at least two people are involved in a conspiracy, one of those people
> has to be you, and in order to be part of the conspiracy, you must have
> known at least generally what was going on and agreed voluntarily to join the
> conspiracy, intending to help move it along or help advance its goals in some
> fashion.  Do you understand those things?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  The kind of conspiracy involved in this case as charged in
> Count 1 must have been aimed at the possession or distribution of cocaine,
> possession with intent to distribute or distribution of [cocaine].  That's the
> specific illegal drug mentioned in Count 1, the Count 1 conspiracy.  Do you
> understand that also?
>
> THE DEFENDANT:  Yes, your Honor.
>
> . . .
>
> THE COURT:  The elements as it relates to Count 2, which is killing a person
> during and in furtherance of a 924(c) violation must be that you were involved
> in commission of the drug offense mentioned in Count 1 . . . it must also be
> true that a firearm was used during and in relation to the commission of the
> drug conspiracy . . . . It must be true that in the course of using the firearm,
> a person was murdered, that is unlawfully killed by the firearm, again during
> and in furtherance of some part of the drug conspiracy in Count 1.  Now,
> there are two ways that you could be charged and convicted of being in
> violation of Count 2.  One of those is if you were the person who was using the
> firearm and discharged it and caused the death . . . . [T]he other way that
> you can be . . . found guilty and convicted, almost as though you were the
> person with his hand on the gun . . . is by helping.  It's called aiding and
> abetting.  You've heard this, I'm sure, many times from your attorney.  It's the
> basis of the charge against you and everybody else, other than the person
> who did pull the trigger according to the information I've seen.  To aid and

14

> abet the commission of a crime, first the crime has to be committed by
> someone. Second, you must have done something that was intended to help
> in the commission of the crime. It doesn't have to necessarily be something
> illegal, but it has to be something that you did knowing that the crime was to
> be committed and intending to assist in the commission of the crime . . . . Do
> you understand that idea, sir?
>
> THE DEFENDANT: Yes, your Honor.

(Dkt. # 199, Pg. ID 495–99.) The court explained and illustrated the elements of the

crime, making sure Young understood the nature and cause of the accusations against

him. Moreover, after government consel recited the terms of the Rule 11 plea

agreement, the court asked Defendant to acknowledge that those were the terms of the

agreement, that he understood those terms, and that he wanted to adopt the agreement

as his own:

> THE COURT: You've had plenty of time to talk about this with your lawyer,
> to negotiate it and to consider whether to accept it. Am I right?
>
> THE DEFENDANT: Yes, your Honor.

(*Id.* at Pg. ID 506.) Finally, the court made it clear to Young that even after having

discussed his situation thoroughly with his attorney, the decision to plead guilty had to

be his own:

> THE COURT: And you have, indeed, discussed this proposed guilty plea
> and this resolution of the case very carefully with Mr. Korn?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: You've gone over all the details to the extent you needed to;
> is that right?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: You've had as much time as you possibly need, I imagine, to
> go over these things and to discuss it and figure out what you want to do.
> Am I correct, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: The decision to enter a plea of guilty, even though you have a . . . very experienced attorney here, has to be yours. This decision cannot be your attorney's. You cannot stand here and plead guilty just because your attorney says that he thinks it's the right thing to do, or because he thinks . . . that this is a big advantage for you. And I rather imagine that he does think and probably has told you that. But whatever he has told you and however he has advised you, the decision has to be yours. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is this indeed your decision, sir?

THE DEFENDANT: Yes, your Honor.

(*Id.* at Pg. ID 492–93.) The court also made sure Defendant knew the legal consequences of entering into the Rule 11 agreement. (*Id.* at Pg. ID 494–95.) Defendant has not shown that he lacked an understanding of the law or the elements of the charges against him.

### b. Illusory Plea Agreement

Defendant's illusory plea agreement claim is similarly unsupported by the facts of this case. In his motion to vacate, Defendant states that the promises contained in his plea agreement "were illusory because the government's only discovered evidence linking [Defendant] to the murder of Antonio Brown was the fact that he refused to take a polygraph test as well as one witness', [sic] 'Sabrina Thompson's' [sic] statement, that he was present at the scene and perhaps had been the shooter." (Dkt. # 283, Pg. ID 1160.) Defendant goes on to say that Thompson's account lacks credibility, and defense counsel failed to seek additional discovery concerning her statement. Defendant's motion fails to cogently explain his argument that he entered into an illusory

16

plea deal.  Young's reply, however, claims that he received no benefit from pleading guilty to second-degree murder because even without the two-point enhancement for obstruction of justice, his guidelines range would already "[be] enhanced for the victim being handcuffed and restrained pursuant to § 3A1.3."  (Dkt. # 293, Pg. ID 1304.)  Due to this enhancement, Defendant argues, the resulting sentencing guidelines were essentially the same as they would have been had he pleaded to first-degree murder, thereby making his agreement to plead to second-degree murder illusory.

Defendant's argument is flawed.  He did receive a benefit from pleading guilty to second-degree murder rather than being charged with a first-degree offense.  In the Second Superseding Indictment, the initial charge of first-degree murder states that Young acted with "malice aforethought, such killing being willful, deliberate, malicious and premeditated."  (Dkt.  # 120, Pg. ID 232.)  Defendant ultimately pleaded to a Fifth Superseding Information, charging him with the reduced offense of second-degree murder.  As a result of pleading guilty to the lesser charge and accepting responsibility, the plea agreement recommended reduced sentencing guidelines, compared to those associated with first-degree murder.  Defendant cannot label his plea agreement as illusory simply because, as a consequence of his own perjury, he did not receive a decrease in his offense level for acceptance of responsibility and instead received a two-level enhancement for obstruction of justice.

### c. Lack of Jurisdiction and Waiver of Indictment

Defendant next argues "that he was provided ineffective assistance of counsel due to the fact that his attorney allowed him to plead guilty to the information in which this court did not have jurisdiction, in violation of his fifth amendment [rights]."  (Dkt.

17

# 283, Pg. ID 1165.)  In this section, Young also concedes that the right to indictment

by grand jury is a waivable right, but argues that because capital punishment may have

been a possibility in his case, he did not make his waiver intelligently and it is therefore

invalid.  Defendant puts forth no argument to support his jurisdiction allegation, and

therefore it will not be addressed.  His argument related to his waiver of indictment lacks

merit.

Defendant's claimed lack of understanding and risk of the death penalty do not

render his indictment waiver invalid.  During Young's plea colloquy, the court ensured

that Young knew he was giving up his right to an indictment.

> THE COURT: You've agreed to be charged on this superseding information,
> a document that is different, slightly different form a grand jury indictment.
> You are giving up and have given up the right to be charged by a grand jury
> indictment; that must be a voluntary act on your part.  And it's, I will note that
> it's a very common decision made by people who intend to plead guilty by
> agreement. Do you understand you have that right and that you have given
> it up, sir?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  And you understand that you have volunteered to be charged
> with an indictment with these specific offenses for the purpose of entering
> this plea of guilty accurately and truthfully on the record; is that correct, sir?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  And you've talked extensively with your attorney about these
> things as well; is that right?
>
> THE DEFENDANT:  Yes, your Honor.

(Dkt. # 199, Pg. ID 520–21.)

The record also speaks to Defendant's erroneous claim that he was "indicted for

first-degree murder by Information."  (Dkt. # 283, Pg. ID 1168.)  As noted in the

18

preceding section, the Government did not indict Defendant for first-degree murder, but instead, as the Fifth Superseding Information indicates, he pleaded guilty to second-degree murder.  (*See* Dkt. # 201, Pg. ID 481.)  Defendant did not plead guilty to a capital crime; he, therefore, did not risk the death penalty.  Young validly waived his right to an indictment.

### d.  Entrapment Defense

Young next argues that he should be allowed to withdraw his guilty plea due to counsel's failure to advise him to proceed to trial under an entrapment defense. Defendant's argument fails, though, because nothing in the record indicates the availability of a non-frivolous entrapment defense.

Defendant provided the factual basis on which the court based his conviction, and now attempts to change it so that he may be found "actually innocent" of the crimes to which he pleaded guilty.  Defendant attempts to argue that his co-conspirator, Williams, induced him into killing Brown.  Young claims that Detroit Police officers arrested Williams in 2005 and released him pursuant to a contract with the Government that made him an informant or agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  The Government states that it turned over all records and information connected to Williams' 2005 arrest, and, moreover, that after August 17, 2005, Williams provided no further information or assistance to the ATF.  (Dkt. # 288, Pg. ID 1246.)  Further, there is no evidence that the Government induced Young into committing his crimes, a necessary prerequisite to an entrapment claim.  *United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010).  And, because, "[c]ounsel [is] not required to raise meritless arguments to avoid a charge of ineffective assistance of

counsel" *Ludwig*, 162 F.3d at 459, counsel was not ineffective for failing to advise

Young to proceed to trial under an entrapment defense.

### e. General Ineffectiveness During Plea and Sentencing Stages

Defendant's final argument consists of an allegation of general ineffective

assistance of counsel during the plea and sentencing stages of his case. Young

asserts that his counsel misrepresented the applicable sentencing guidelines, and that

to determine whether he understood the plea agreement, the court should do more than

examine the present record. The court disagrees.

Defendant has not shown any misunderstanding as to the sentencing guidelines

that his plea agreement recommended; he has shown only that he disagrees with them.

Moreover, as already discussed, Defendant knowingly and voluntarily entered a guilty

plea pursuant to a Rule 11 agreement and the court appropriately imposed Defendant's

sentence. He has not proven that counsel's performance fell below an objective

standard of reasonableness during the plea and sentencing stages.

Defendant's motion to vacate his sentence will be denied.

### B. Discovery Motions

Defendant has also filed a motion for production of discovery and a motion for

production of transcripts, under Rule 6(a) of the Rules Governing Section 2255

Proceedings in the United States District Court and 28 U.S.C. § 753(f). His motions are

meandering but it appears that he principally seeks copies of all documentation related

to his co-conspirator Williams' involvement with the Government, as well as materials

that would prove his assertions of entrapment and that the government withheld

exculpatory evidence. Because Defendant's second motion, styled as a motion for

20

production of transcripts, is essentially duplicative of Defendant's motion for production of discovery, the two will be addressed in tandem.

Under Rule 6(a) of the Rules Governing Section 2255 Proceedings, a petitioner "shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause grants leave to do so, but not otherwise."  "Good cause is established where specific allegations . . . show reason to believe that [the movant] may, if the facts are fully developed, be able to demonstrate entitlement to relief." *Cornell v. United States*, 472 F. App'x. 352, 354 (6th Cir. 2012) (citations and internal quotation marks omitted).  Rather than make specific allegations, as Rule 6(a) requires, Young makes vague assertions and seeks materials to form better ones.  For example, Petitioner states that "he can not [sic] make accurate factual allegations without reviewing the transcripts and discovery in support of his Constitutional claims for relief." (Dkt. # 289, Pg. ID 1278.)  As discussed herein, the court is not persuaded that Defendant will be able to demonstrate his entitlement to relief and thus the Court will not order the expenditure of public funds to provide him with the materials he seeks under Rule 6(a).

Under 28 U.S.C. § 753(f), a court may require that the United States pay for a transcript requested by a § 2255 movant:

> Fees for transcripts furnished in proceedings brought under section 2255 of this title to persons permitted to sue or appeal *in forma pauperis* shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal.

The court cannot certify that Defendant's claims are "not frivolous" and thus his discovery motions must fail.  Moreover, Defendant has not demonstrated a particularized need for the documents he seeks.  He asserts that he needs the discovery materials he seeks "before making bald allegations based on inaccurate statements."  (Dkt. # 292, Pg. ID 1288.)

> If the Court is not given the benefit of some definite allegation as to the nature of the alleged illegal aspects of the judgement and sentence, it is but natural to surmise that this a fishing expedition and that the present vague allegation of illegality is not made in good faith.

*Culbert v. United States*, 325 F.2d 920, 922 (8th Cir. 1964) (quoting *United States v. Lawler*, 172 F.Supp. 602, 605 (S.D. Tex. 1959)); *see also Bentley v. United States*, 431 F.2d 250, 252 (6th Cir. 1970) (explaining that a defendant is not entitled to free transcript to search for grounds to file a motion under § 2255).

The court will deny Defendant's discovery motions.

### III.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a defendant demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the court concludes that reasonable jurists would not debate the court's assessment of Defendant's claims. Therefore, the court will deny a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's motion to vacate sentence (Dkt. # 283) is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for production of discovery (Dkt. # 289) is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for production of transcripts (Dkt. # 292) is DENIED.

Finally, IT IS ORDERED that a Certificate of Appealability is DENIED as to all of Defendant's claims.

           s/Robert H. Cleland
           ROBERT H. CLELAND
           UNITED STATES DISTRICT JUDGE

Dated: June 30, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 30, 2014, by electronic and/or ordinary mail.

           s/Lisa Wagner
           Case Manager and Deputy Clerk
           (313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\06-20411-4.YOUNG.Deny2255.Final.wpd